UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTINE L. | : |
| | : |
| v. | :  C.A. No. 24-00145-LDA |
| | : |
| CAROLYN W. COLVIN, Commissioner | : |
| Social Security Administration | : |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on April 11, 2024 seeking to reverse the decision of the Commissioner. On August 7, 2024, Plaintiff filed a Motion to Reverse or Remand the Decision of the Commissioner. (ECF No. 10). On August 29, 2024, the Commissioner filed a Motion to Affirm the Decision of the Commissioner. (Document No. 12). No reply brief was filed.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, Plaintiff's Motion to Reverse (Document No. 10) is DENIED and the Commissioner's Motion to Affirm (ECF No. 12) is GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 20, 2021 alleging disability since February 1, 2020. (Tr. 236-237). The application was denied initially on February 3, 2022 (Tr. 90-99) and on reconsideration on February 28, 2022. (Tr. 101-109). Plaintiff requested an Administrative Hearing which was held on October 11, 2022 before Administrative Law Judge Kate Dana (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and/or testified. (Tr. 38-80). The ALJ issued an unfavorable decision to Plaintiff on April 3, 2023. (Tr. 14-31). On February 6, 2024, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner erred as a matter of law by failing to account for alleged side effects of Plaintiff's medication. Plaintiff also argues that the ALJ's Step 5 analysis was flawed, and that the ALJ erred as a matter of law in crafting Plaintiff's RFC.

The Commissioner disputes Plaintiff's claims and contends that substantial evidence supports the ALJ's findings.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See <u>Jackson v. Chater</u>, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. <u>Id.</u> With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. <u>Id.</u> The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. <u>Id.</u>

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

A.   **Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence. The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of

examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source

evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

**B.    Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving

only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1.   Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. Social Security Ruling ("SSR") 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to

produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

V.    **APPLICATION AND ANALYSIS**

A.    **The ALJ's Decision**

The ALJ found Plaintiff had the severe impairments of epilepsy, neurocognitive disorder, depressive disorder, and anxiety-related disorder. (Tr. 20). The ALJ determined that none of Plaintiff's impairments met or medically equaled a Listing. (Tr. 21-23). The ALJ went on to assess Plaintiff's residual functional capacity ("RFC") and found Plaintiff had the RFC to perform medium work except, as relevant here, Plaintiff can understand, remember, and carry out simple tasks and instructions; can tolerate occasional changes in a routine work setting; can perform goal-

oriented work; but cannot perform time-pressured tasks with strict production quotas. (Tr. 23). The ALJ then found Plaintiff not disabled because an individual with Plaintiff's RFC and vocational profile could do a significant number of jobs in the national economy. (Tr. 30–31).

**B.     The ALJ Did Not Err in Consideration of the Side Effects of Plaintiff's Medication**

Plaintiff first argues that the ALJ erred as a matter of law by failing to adequately consider the effects of Plaintiff's "medication regimen" on her ability to perform her work-related activities. In support of this assertion, Plaintiff points to her function report (Tr. 291-298), completed in September 2021 that states that the medication Keppra made her feel "very sleepy." (Tr. 298). Further, she notes that she testified before the ALJ that while her medications were "helpful" in treating her symptoms, the medications also cause exhaustion and tremors. Viewed as a whole, the medical record indicates that Plaintiff's treating physicians were attempting to balance the side effects of her medications against the efficacy of seizure control. (Tr. 737, 824). In the course of striking this balance, Plaintiff reported that her fatigue was "tolerable" (Tr. 605) and that she was a "little better in terms of exhaustion." (Tr. 737).

The applicable Regulations state that the ALJ should consider the "side effects of any medications" among other factors when evaluating the claimant's symptoms and RFC. See 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-8p, 1996 WL 374184, at*5 (July 2, 1996). The Commissioner argues, however, that the ALJ is not required to "slavishly discuss all...factors relevant to [the] analysis of a claimant's [symptoms] and complaints of pain in order to make a supportable...finding." Peters v. Colvin, 133 F. Supp. 3d 273, 282 (D. Mass. Sept. 23, 2015). Plaintiff contends that because the ALJ "did not mention the side effects" of her medications and

any impact of such side effects on her RFC, the ALJ committed reversible error. Plaintiff relies upon Musto v. Halter, 135 F. Supp. 2d 220, 229 (D. Mass. 2001) as support for this argument. The Court disagrees with Plaintiff's characterization of Musto and finds it distinguishable. Notably, in Musto, the claimant offered inconsistent testimony about his medications and side effects that the district court found "more confusing than informative," and the ALJ did not further question the claimant to develop the record and gain clarity. Id. at pp. 229-231. Here, Plaintiff testified as to some tiredness and fatigue, but presently fails to identify any evidence in the medical record that supports her present argument that her drowsiness "can easily contribute" to time off task. (ECF No. 10 at p. 4). This argument is unsupported, as there is no supporting medical evidence of record and no ambiguity requiring further development of the record. See Tr. 85-87, 94-97, 766.

### C. Plaintiff Has Not Shown Any Step 5 Error

Plaintiff argues that the ALJ erred because of a "seeming conflict" between her RFC finding that she could perform only simple tasks and the VE's testimony that she could do jobs with a GED reasoning level of 2-3. (ECF No. 10 at p. 7). Plaintiff's contention is both unsupported and unpersuasive. The case law is clear (both in this District and elsewhere) that jobs with a GED reasoning level of 2 or 3 are consistent with an RFC limitation to simple and unskilled tasks. See, e.g., Su Y. v. O'Malley, C.A. No. 23-541-JJM-PAS, 2024 WL 3385200, at *3 (D.R.I. July 11, 2024). Plaintiff concedes that five of the six jobs relied upon by the ALJ require a reasoning level of 2 or 3. (ECF No. 10 at p. 6).

### D. Substantial Evidence Supports the RFC

Finally, Plaintiff raises two issues with the RFC: (1) that the ALJ failed to take into account the ability to complete a normal workday and workweek in her RFC; and (2) that the ALJ

improperly weighed the consultative examiner's opinion. Turning to the first argument, the ALJ appropriately found persuasive the opinions of state agency consultants Adrian Brown, Ph.D. and Ryan Haggarty, Ph.D., that Plaintiff could "carry out simple and repetitive tasks with necessary concentration, persistence and pace for two-hour periods across a normal workday and work week without special supervision." (Tr. 27, 97, 107). The ALJ noted that these opinions are supported by their "review of an extensive amount of medical evidence…" and that the consultants "provided extensive rationales to support their opinions, citing to specific evidence of record, and resolving inconsistencies in the record. They assessed specific work-related functional limitations and abilities consistent with the medical evidence of record, as previously described." (Tr. 27-28).

The Commissioner reasonably points out that state agency consultants, like Drs. Brown and Haggarty, are tasked with assessing a claimant's capacity to sustain work over a normal workday and workweek on an ongoing basis, and to do otherwise would, of course, provide no insight into a claimant's actual functional capacity. The Agency's Program Operations Manual System (POMS) directs adjudicators to "consider a claimant's ability or inability to sustain a forty-hour workweek; advising that '[i]nability to sustain a 40-hour workweek is an RFC finding.'" Christopher B. v. Kijakazi, No. 1:22-cv-00333-NT, 2023 WL 5949446, at *4 (D. Me. Sept. 13, 2023) (citing POMS DI § 24510.057(B)(1)-(2), (4)), R. & R. adopted, 2023 WL 6390661 (D. Me. Oct. 2, 2023). Here, neither Dr. Brown nor Dr. Haggarty found any attendance-related limitations after reviewing the record. The ALJ's evaluation of the medical-opinion evidence and resulting RFC is supported by substantial evidence, free of legal error, and must be affirmed.

The second issue raised by Plaintiff is that the ALJ erred in the treatment of the findings of Consultative Examiner Dr. Wendy Underhill. Plaintiff specifically asserts that it was error for the

-15-

ALJ to find Dr. Underhill's opinion only "partially persuasive" as to the Paragraph B criteria. Dr. Underhill opined that Plaintiff was "moderately to markedly limited in her ability to handle ordinary job stress." (Tr. 766). The ALJ considered this but noted that Dr. Underhill's statement lacked specificity, was not supported, and her statement "reflects a vague and broad range of functioning that ranges between some useful ability to function and no useful ability to function." (Tr. 28). The ALJ also noted that her statement was also "inconsistent with other significant evidence of record" including the opinions of Drs. Brown and Haggarty, and with the "specific work-related adaptations they assessed." Id. at pp. 27-28.

Ultimately, Plaintiff's challenge to the ALJ's evaluation of the record in this case inappropriately asks this Court to reweigh the evidence in a manner more favorable to her. See e.g., Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001) (the ALJ is responsible for weighing the evidence and resolving conflicts). The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 293 Fed. Appx. 6, 2006 WL 255972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987). In other words, the issue presented is not whether this Court would have rendered a disability finding reviewing this record de novo but rather whether the record contains substantial evidence sufficient to support the ALJ's findings. Since Plaintiff has shown no error in the ALJ's evaluation of the medical evidence or in the ALJ's ultimate findings, and those findings are adequately supported by the record, the ALJ's decision must be affirmed.

VI.    CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (ECF No. 10) is DENIED and Defendant's Motion to Affirm the Decision of the Commissioner (ECF No. 12) is GRANTED.  Further, the Clerk shall enter Final Judgment in favor of Defendant.

SO ORDERED


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 16, 2024